**CHARLES J. PATERNOSTER**, OSB # 024186
Email: cpaternoster@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone:  (503) 222-1812
Facsimile:  (503) 274-7979

**ALAN J. GALLOWAY**, OSB #083290
E-mail: alangalloway@dwt.com
**TIM CUNNINGHAM**, OSB #100906
E-mail: timcunningham@dwt.com
DAVIS WRIGHT TREMAINE, LLP
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon  97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

    Attorneys for Plaintiff Carrie Medina
    on behalf of the ACLU Foundation of Oregon, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| CARRIE MEDINA,<br><br>                  Plaintiff,<br><br>   v.<br><br>CITY OF PORTLAND, a municipal corporation, CITY OF GRESHAM, a municipal corporation, TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, a municipal corporation, OFFICER TAYLOR LETSIS, as both an individual and in his official capacity as an officer of the Gresham Police Department, UNKNOWN POLICE OFFICERS NOS. 1, 2 AND 3, both as individuals and in their capacities as officers of the Portland Police Bureau,<br><br>                  Defendants. | Case No. 3:15-cv-00232-BR<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON'S MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

## I.  INTRODUCTION

Plaintiff Carrie Medina's allegations support her claims that TriMet violated her First and Fourth Amendment rights, as well as her rights under the Privacy Protection Act, 42 U.S.C. §2000aa *et seq.* ("PPA").  Plaintiff has alleged that without probable cause, and without her consent, a member of the Transit Police forcibly detained her, terminated her live broadcast, and searched her smartphone as she was peacefully broadcasting the scene of an arrest.  She has also alleged that the Transit Police are provided by defendant Tri-County Metropolitan Transportation District of Oregon ("TriMet"), that TriMet administers the Transit Police and appoints its commander, and that TriMet's liability for the incident flows from the policies, customs, training and supervision of the Transit Police.  TriMet's motion to dismiss does not argue that these allegations are insufficient to state a claim for municipal liability under 47 U.S.C. § 1983.

Instead, TriMet argues that plaintiff's additional allegation that the City of Gresham employed the primary officer in question—Officer Taylor Letsis ("Officer Letsis")—completely absolves TriMet of any legal responsibility.  TriMet's argument is a red herring: nothing in §1983, the PPA, or the jurisprudence interpreting those statutes requires a formal employment relationship with an individual tortfeasor for municipal liability to attach, especially where that individual was carrying out TriMet's policies and customs, and was subject to TriMet training and supervision.  If the formal employment relationship were dispositive, as TriMet argues, then any law municipality could avoid liability for its policies by simply contracting out policing to a private firm that would hire the individual officers.  Plaintiff respectfully asks that the court reject TriMet's attempt to contract away its liability under § 1983 and the PPA and deny TriMet's motion to dismiss.

## II.  ARGUMENT

### A.     Plaintiff's Factual Allegations

In relevant part, plaintiff has alleged that TriMet provides a police force called the Transit Police which it has opted to administer through intergovernmental agreement.  Complaint, Dkt. #1 ¶ 14 (hereinafter "Compl.").  "TriMet is a public body liable for the acts and omissions of members of the Transit Police and other agents and employees acting within the scope of their agency and/or employment."  *Id.*

> The Transit Police patrols are administered, coordinated, and directed by the Portland Police Bureau under an agreement among TriMet, Portland and Gresham.  The Transit Police Division Commander is selected jointly by Portland and TriMet.  The Transit Police patrols are staffed by officers from the Portland Police Bureau, the Gresham Police Department, and officers from other jurisdictions.  Selection and assignment of officers and deputies to the Transit Police are determined jointly by the command personnel of the officer's or deputy's jurisdiction (*e.g*., Portland or Gresham), TriMet, and the Transit Police command personnel.  Police officers assigned to the Transit Police are subject to the General Orders and training requirements of their respective jurisdictions, as well as the Transit Police's Standard Operating Procedures (except to the extent that they conflict with the General Orders of the officer's respective jurisdiction).

Compl. ¶ 15.  As the complaint alleges, a police car marked "Transit Police" was at the scene of the incident.  Compl. ¶ 27.

Plaintiff alleged that defendant Officer Taylor Letsis "was an employee of the Gresham Police Department."  Compl. ¶ 16.  But plaintiff has also alleged (and TriMet has not addressed) that "at all times material to this action, defendant Officer Taylor Letsis was working as a member of the Transit Police, and acting within the scope of his employment and under color of law."  Compl. ¶ 16.  As a member of the Transit Police, the scope of his employment included abiding by TriMet's policies, as well as those of Portland (who administers the Transit Police) and Gresham.  TriMet has failed to address the allegation that Officer Letsis was acting not only as a Gresham officer, but as a member of the Transit Police subject to Transit Police policies.  That failure is critical, and, in fact, is fatal to its motion.

Plaintiff's interactions with Officer Letsis are central to her complaint. She has alleged that Officer Letsis terminated her broadcast, seized her smartphone, and searched it while he detained her. *See generally* Compl. ¶¶ 20-46.

Plaintiff's specific allegations of municipal liability under §1983 against TriMet include:

> On information and belief, as of February 12, 2013, Transit Police officers had a widespread custom and practice of seizing cameras and/or recording devices and searching such devices for video footage, in the name of searching for evidence, when persons recorded or broadcast audiovisual footage of the police in public, even in circumstances where there was no reason to suspect the person capturing the footage of a crime and where no exigent circumstances existed, and Gresham, Portland, and TriMet were, or should have been, aware of this custom and practice.
>
> On information and belief, as of February 12, 2013, Gresham, Portland, and TriMet maintained official policies allowing Transit Patrol officers to seize cameras and/or recording devices and search such devices for video footage when persons recorded or broadcast audiovisual footage of the police in public, even in circumstances where there was no reason to suspect the person taking the footage of a crime and no exigent circumstances existed.
>
> On information and belief, as of February 12, 2013, Gresham, Portland, and TriMet failed to train Transit Police officers about the First and Fourth Amendment rights of the public and the press to observe, record and broadcast public scenes of police activity, displaying deliberate indifference to the constitutional rights enjoyed by all persons in the United States.
>
> On information and belief, as of February 12, 2013, Gresham, Portland, and TriMet failed to supervise and discipline Transit Police officers for unlawfully interfering with the First Amendment rights of the public and the press to observe, record and broadcast public scenes of police activity, displaying deliberate indifference to the constitutional rights enjoyed by all persons in the United States.
>
> On information and belief, the aforementioned unconstitutional policies, customs, and practices of the Gresham, Portland, TriMet, and the Transit Police were the moving force behind Officer Letsis' violation of Ms. Medina's constitutional rights on February 12, 2013.
>
> As a direct and proximate result of the unconstitutional policies, customs, and practices of Gresham, Portland, TriMet, and the Transit Police, Ms. Medina suffered injuries, including without limitation physical and psychological injuries, the interruption of

> her live broadcast and corresponding loss of footage she would have otherwise captured, and invasion of her privacy. As a result of those injuries, plaintiff is entitled at least to compensatory damages in the amount of twenty-one dollars.

Compl. ¶¶ 94-98.

Finally, plaintiff has alleged that Officer Letsis violated the PPA while a member of the Transit Police, a service provided by TriMet, and subject to the Transit Police's Standard Operating Procedures. Compl. ¶¶ 14-15. Because Officer Letsis was subject to TriMet's control, a cause of action exists against TriMet for Officer Letsis' actions. *See generally* Compl. ¶¶ 15, 101-115.

### B. Standard of Review

The court's standard of review is well established:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 544,] 570, 127 S.Ct. 1955 [167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556, 127 S.Ct. 1955 The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See also Bell Atlantic*, 550 U.S. at 555–56, 127 S.Ct. 1955. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013). *See also Oracle America, Inc. v. Oregon Health Ins. Exch. Corp.*, No. 3:14-CV-01279-BR, --- F. Supp. 3d ----, 2015 WL 163394 at *5 (D. Or. Jan. 13, 2015) (stating standard ).

### C. Municipal liability under § 1983 and *Monell* has never required an employment relationship with an individual tortfeasor.

TriMet attempts to disclaim all liability for the actions of the Transit Police—which is a service provided *by TriMet*—based on TriMet's policy decision to provide those services

Page 5 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

through an intergovernmental agreement with other jurisdictions as opposed to hiring its own officers. But TriMet's liability does not turn on which municipality or municipalities employed individual officers; TriMet's liability turns on whether the customs, policies, training or supervision of the Transit Police and Officer Letsis (including any deliberate indifference to the constitutional rights of police watchdogs such as Ms. Medina) are attributable to TriMet. Accepting plaintiff's allegations as true and construing them in her favor, she has pleaded that they are.

TriMet does not actually dispute that plaintiff has properly pleaded municipal liability; instead TriMet attempts to confuse the issue of municipal liability by arguing that because Officer Letsis was not a TriMet employee, no liability can exist against TriMet. TriMet's Motion to Dismiss, Dkt. #23 at 5 (hereinafter "Motion").[1] But that argument would only succeed if plaintiff was asserting *respondeat superior* liability against TriMet, which the parties agree does not exist under §1983. *See id.*

Instead, consistent with *Monell v. N.Y. Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 611 (1978), and its progeny, plaintiff has alleged that TriMet's liability stems from a custom of unlawful searches *within the Transit Police*, Compl. ¶ 93, an official policy allowing such seizures *within the Transit Police*, Compl. ¶ 94, and its failure to train and supervise *the Transit Police*, Compl. ¶¶ 95-96. Plaintiff has alleged the Transit Police are a service provided *by TriMet*, Compl. ¶ 14, that TriMet is involved in the administration of the

---

[1] TriMet cites *City of Los Angeles v. Heller*, 475 U.S. 769, 799 (1986) and *Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986) for this proposition, but those cases only hold that absent an individual officer's underlying liability, there can be no claim against a municipality as a matter of law. Plaintiff does not dispute that if a jury finds that Officer Letsis or Unknown Officers #1, #2, and #3 did not violate any of her Constitutional rights, then her *Monell* claims will necessarily fail. But neither *Heller* nor *Palmerin* stand for the broad proposition that the lack of a formal employment agreement between Transit Police officers and TriMet insulates TriMet from *Monell* liability.

force—including selecting its commander, Compl. ¶ 15, and that Transit Police officers must comply with the Transit Police's Standard Operating Procedures. Compl. ¶ 15.[2] TriMet's policies, training and supervision reach outside of its technical "employees;" plaintiff has alleged that Officer Letsis was a member of the Transit Police, and was acting as a Transit Police officer at all relevant times. Compl. ¶ 16. This is sufficient to state a claim under *Monell*; the entity with which Officer Letsis had an employment contract is simply beside the point and none of TriMet's authority suggests otherwise. *See Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").[3]

If TriMet's argument here reflected the law, then any law municipality could avoid liability for its policies by simply contracting with a private firm to administer its police force, including hiring its officers. Under those circumstances, the municipality would not have any "employees" on the police force whatsoever. But that is not the law. Any municipality that attempted such a maneuver would still be liable under *Monell* for its policies and practices when the execution of those policies and practices injures citizens. *See Ancata v. Prison Health Servs.,*

---

[2] TriMet's invocation of *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), for the proposition that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution," Motion at 5, is inapposite. TriMet is not a "Government-official" defendant; it is a government defendant, and notwithstanding its "employee" argument, TriMet does not dispute that plaintiff has stated a claim under *Monell*.

[3] Even if Officer Letsis's "employer" were germane to the inquiry, plaintiff has pleaded sufficient facts for a jury to determine that for purposes of liability TriMet *was* Letsis's employer. *See* Restatement (Third) of Agency §7.03 cmt. d(2) ("It is a question of fact whether a general or special employer, or both, have the right to control an employee's conduct."); *Dykema v. Skoumal*, No. 98 CV 5309, 2000 WL 949582 at *2 (N.D. Ill. July 7, 2000) ("[T]here is a fact issue as to whether [the City of] Joliet can be held liable for plaintiff's [§1983] and state law claims based on Skoumal's actions, *even if Skoumal is also considered a state employee*." (emphasis added)).

*Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service." (citation omitted)); *Warren v. Dist. of Columbia*, 353 F.3d 36, 37, 39 (D.C. Cir. 2004) (stating that *Monell* applies where a municipality's "agents" acted pursuant to municipal policy or custom, and analyzing *Monell* claim where "[t]he Corrections Corporation of America operated the prison pursuant to a contract with the District.").

The fact that plaintiff has alleged that TriMet administers the Transit Police in concert with Gresham and Portland does not alter this analysis. In *City of St. Louis v. Praprotnik*, the Supreme Court made clear that when assessing municipal liability under § 1983, "there will be cases in which policymaking responsibility is shared among more than one official or body." 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). "If . . . a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." *Id.* at 126. *Cf. Ross v. United States*, 910 F.2d 1422, 1428-29 (7th Cir. 1990) (noting that "a case could arise where a governmental entity transfers its policy-making authority so that it would be consistent with principles of municipal liability to hold the entity constitutionally responsible," but declining to apply the principle where the transferring authority "had no authority to influence the [transferee's] procedures").

Applying the above principles, various courts have rejected arguments similar to TriMet's—finding that even absent an "employment" agreement between an individual tortfeasor and a municipality, municipal liability can attach under § 1983 where the policies that caused the injury were fairly attributable to the municipality.

For example, in *Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001), the court rejected the City of Little Rock's argument—like TriMet's here—that because it had contracted

Page 8 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

DWT 26639737v5 0200835-000001

its provision of jail services to the County, it was not liable for the County's treatment of

prisoners:

> As the City points out, it does not operate the jail. The City of Little Rock has no jail of its own. It contracts with the County for the housing of City prisoners. What the County does with prisoners, therefore, the City says, is not its problem, and there is no vicarious liability under § 1983. Although this line of argument has some surface appeal, we do not believe that the jury had to accept it. City employees were aware of the custom of chaining prisoners, and they knew that Ms. Young was being taken back to the jail. Strip searching of prisoners is routine procedure, and the jury could reasonably infer that the City knew that a person entering the jail, in jail clothing with a group of other detainees, would be strip searched. In these circumstances, it is far from unfair to attribute to the City the policies routinely used by the County jail in the housing and processing of City prisoners.

*Id.* Similarly, in *Ford v. City of Boston*, the District of Massachusetts rejected the City of

Boston's claim that it could not be liable under *Monell* where Suffolk County, with which the

City had contracted for prison services, was the entity that employed all of the individual actors

and set all of the various policies.

> City liability for the Jail searches of BPD arrestees poses an interesting question of institutional responsibility. Again, the governing standard derives from *Monell*: § 1983 provides a cause of action against a municipality for violations resulting from implementation or execution of city policies or customs. In this case, though, the plaintiffs' claims fit none of the standard analytic models for municipal liability. For example, the City, unlike the County, had no express policy of subjecting all BPD arrestees to strip and visual body cavity searches. Indeed, the City claims—and I assume, for purposes of this ruling—that it had no control over the promulgation of the County policies proximately responsible for the challenged searches. Further, the record before me does not suggest that any City employees had a practice or custom of conducting such searches—let alone a practice sufficiently "well settled and widespread" as to be attributable to the City. Finally, none of the challenged searches resulted directly from the City's failure to promulgate a search policy, nor from its failure to train its employees regarding the constitutional prerequisites to a search.
>
> Nonetheless, the plaintiffs' claims against the City are clearly actionable under § 1983. The plaintiffs point to an express agreement between the City and the County Sheriff, under which the County agreed to "take custody of and house" BPD arrestees at the Jail. This case is thus best analyzed as involving a subcontract

Page 9 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

DWT 26639737v5 0200835-000001

> between the City and the County, under which Jail employees, acting as agents of the City, supervised and cared for City arrestees. As such, the City had an affirmative obligation—as is present in the more standard models for municipal liability—to ensure that the policy of the Jail officials did not lead to widespread violation of BPD arrestees' constitutional rights.

154 F. Supp. 2d 131, 148-49 (D. Mass. 2001) (internal citations and footnotes omitted).

Finally, in *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1187, 1189-90 (N.D. Ill. 2013), the Northern District of Illinois found that plaintiff stated a claim for *Monell* liability against Lake County based on its control of the "Lake County Major Crimes Task Force," despite the fact that the Task Force was comprised of individual officers from the Waukegan Police Department and the Lake County Sheriff's Department. The court framed the issue as "whether Lake County can be held liable under *Monell* for actions of other Defendants," and concluded that it could because "Plaintiff has pled that Defendant Lake County controlled the policies and practices that led to constitutional violation." *Id.* at 1190.

Plaintiff has alleged that Transit Police officers—regardless of which municipality employs them—act as agents of TriMet and carry out TriMet policy. Like the governments in *Young, Ford*, and *Rivera*, TriMet cannot escape liability simply by arguing that it has no employees on the Transit Police—a service *TriMet itself* provides.

### D.  Defendant's arguments against declaratory relief fail for the same reasons.

Similarly, TriMet argues that because "Officer Letsis was employed by the City of Gresham," plaintiff's claims for declaratory relief must fail. Motion at 6-7. As discussed, plaintiff's constitutional claims do not turn on the entity which employed Officer Letsis—if they did, they would be improper *respondeat superior* claims. Instead, plaintiff's constitutional claims center on TriMet's liability for the Transit Police's customs, policies, training and supervision. For the same reason, plaintiff's declaratory judgment claims do not turn on the entity which employed Officer Letsis and should not be dismissed.

### E.       Under the Privacy Protection Act, Officer Letsis is an "employee" of TriMet

TriMet's second argument is that the Privacy Protection Act only runs against a governmental unit for violations committed by "their officers or employees," 42 U.S.C. § 2000aa-6(a)(1), and that because Officer Letsis is employed solely by the City of Gresham, plaintiff's claim must be dismissed. Motion at 5-6.[4] TriMet's argument fails because Officer Letsis qualifies as a TriMet "employee" as that term is used in the Privacy Protection Act.

The term "employee" is not defined in the PPA. *See* 42 U.S.C. § 2000aa-7. The Supreme Court has noted that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Commt'y for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40, 109 S. Ct. 2166, 104 L.Ed.2d 811 (1989) (collecting cases). In *Reid*, the Supreme Court buttressed this general proposition with the fact that the statute at issue (the Copyright Act) used the term "'scope of employment,' a widely used term of art in agency law." *Id.* at 740. Here too, the term "employee" is undefined and the PPA provides for a right of action against a governmental unit for violations "by their officers or employees while acting *within the scope . . . of their . . . employment*." 42 U.S.C. § 2000aa-6(a)(1) (emphasis added). The PPA thus covers all "employees" of a governmental unit "as understood by common-law agency doctrine." *Cf. Morse v. Regents of University of Cal.*, 821 F.

---

[4] TriMet's unsupported assertion that the Privacy Protection Act was "enacted . . . to protect traditional media organizations," Motion at 5, is belied by both the text of the statute and its legislative history. The statute on its face prohibits searches or seizures against a "person reasonably believed to have a purpose to disseminate to the public" not a "media person" or any other phrase that indicates a limitation to "traditional media organizations." 42 U.S.C. § 2000aa (a). The legislative history demonstrates that "the department of justice, in drafting the legislation, *rejected the idea of a 'press only' bill* and sought to avoid the chilling effects of disruptive searches on the ability to obtain and publish information for *all those who have a purpose to disseminate information to the public*." 96th Cong. S. Rep. 96-874 at 9 (emphasis added).

Supp. 2d 1112, 1121 (N.D. Cal. 2011) (construing PPA broadly to allow claim for supervisory liability).

Plaintiff has properly pleaded allegations that could allow a jury to determine that Officer Letsis was a common-law "employee" of TriMet. Plaintiff has alleged that TriMet provides Transit Police Services, Compl. ¶ 14, that TriMet jointly administers the Transit Police and assigns officers, Compl. ¶ 15, and that Transit Police are subject to Transit Police Standard Operating Procedures, Compl. ¶ 15. Plaintiff has further alleged that Officer Letsis was "working as a member of the Transit Police, and *acting within the scope of his employment*." Compl. ¶ 16 (emphasis added). Under the common-law, a person is an "employee" where the hiring party has the right to control the manner and means by which work is accomplished. *Reid*, 490 U.S. at 751. Because as pleaded, TriMet had the right to control Officer Letsis through its provision and administration of the Transit Police, and through Officer Letsis's duty to abide by Transit Police Standard Operating Procedures, a jury could find that he was a TriMet "employee" sufficient to attach liability under the PPA. Plaintiff's PPA claim against TriMet should not be dismissed.

### III. CONCLUSION

TriMet's § 1983 liability in this case hinges on the policies, customs, training and supervision of the Transit Police, which is a service provided by TriMet. Plaintiff has alleged that Officer Letsis was working as a Transit Police officer subject to Transit Police procedures, and that Transit Police policies, customs, training and supervision were the moving force behind her injury. That alone is sufficient to state a claim for municipal liability under §1983, regardless of the entity that technically employed Officer Letsis. Section 1983 and *Monell* have never required an employment relationship with an underlying tortfeasor to establish municipal liability. Introducing such a requirement is unsupported by the case law, would blur the distinction between *respondeat superior* and *Monell* liability, and more importantly, would allow municipalities to contract away their liability under §1983. That cannot be the law and plaintiff's

Page 12 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

claim against TriMet under §1983 should not be dismissed.  Plaintiff's declaratory relief claims against TriMet survive for the same reasons.

Similarly, TriMet's PPA liability turns not on whether it had a formal employment agreement with Officer Letsis but on whether it exercised sufficient control over Officer Letsis for him to be considered an employee under the common law.  Plaintiff has alleged facts sufficient for a jury to find as much, and her PPA claim against TriMet should not be dismissed.

DATED this 27th day of April, 2015.

**PARSONS FARNELL & GREIN, LLP**


By  s/ Charles J. Paternoster
    Charles J. Paternoster, OSB # 024186
    Email: cpaternoster@pfglaw.com
    Telephone:  (503) 222-1812

**DAVIS WRIGHT TREMAINE LLP**


By  s/ Alan J. Galloway
    Alan J. Galloway, OSB #083290
    E-mail: alangalloway@dwt.com
    Tim Cunningham, OSB #100906
    E-mail: timcunningham@dwt.com
    Telephone: (503) 241-2300

    Attorneys for Plaintiff Carrie Medina on behalf of the ACLU Foundation of Oregon, Inc.

## CERTIFICATE OF SERVICE

  I hereby certify that I served a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON'S MOTION TO DISMISS** on the following parties at the following addresses by notice of electronic filing using the CM/ECF system:

| | |
|---|---|
| Robert S. Wagner<br>David C. Lewis<br>Miller & Wagner, LLP<br>2210 NW Flanders Street<br>Portland, OR 97210-3408<br>Phone: 503-299-6116<br>Fax: 503-299-6106<br>rsw@miller-wagner.com<br>dcl@miller-wagner.com | Denis M. Vannier, Deputy City Attorney<br>Portland Office of the City Attorney<br>1221 SW Fourth Avenue, Suite 430<br>Portland, OR 97204<br>Denis.vannier@portlandoregon.gov |
| Charles J. Paternoster<br>Parsons Farnell & Grein LLP<br>1030 SW Morrison Street<br>Portland, OR 97205<br>cpaternoster@pfglaw.com | Kimberly A. Sewell<br>Tri-Met<br>1800 SW First Avenue, Suite 300<br>Portland, OR 97201<br>sewellk@trimet.org |

  Dated this 27th day of April, 2015.

            By  s/ Alan J. Galloway
              Alan J. Galloway, OSB #083290
              Tim Cunningham, OSB #100906

              Of Attorneys for Plaintiff