IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARRIE MEDINA,                                    3:15-cv-00232-BR

        Plaintiff,                              OPINION AND ORDER

v.

CITY OF PORTLAND, a municipal
corporation; CITY OF GRESHAM, a
municipal corporation; TRI-COUNTY
METROPOLITAN TRANSPORTATION
DISTRICT OF OREGON, a municipal
corporation; OFFICER TAYLOR
LETSIS, both individually and in
his official capacity as an officer
of the Gresham Police Department;
UNKNOWN POLICE OFFICERS NUMBERS 1,
2, AND 3, both individually and in
their official capacities as
officers of the Portland Police
Bureau,

        Defendants.

ALAN J. GALLOWAY
TIMOTHY M. CUNNINGHAM
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, OR 97201-5630
(503) 778-5219

1 - OPINION AND ORDER

**CHARLES J. PATERNOSTER**
Parsons Farnell & Grein, LLP
1030 S.W. Morrison Street
Portland, OR 97205
(503) 222-1812

      Attorneys for Plaintiff

**ROBERT S. WAGNER**
**DAVID C. LEWIS**
Miller & Wagner, LLP
2210 N.W. Flanders Street
Portland, OR 97210
(503) 299-6116

      Attorneys for Defendants City of Portland, City of
      Gresham, Tri-County Metropolitan Transportation
      District of Oregon, and Officer Taylor Letsis

**BROWN, Judge.**

    This matter comes before the Court on the Motion (#23) to
Dismiss filed by Defendant Tri-County Metropolitan Transportation
District of Oregon (TriMet).  The Court heard oral argument on
the Motion on June 19, 2015, and took the matter under advisement
at the conclusion of that hearing.  For the reasons that follow,
the Court **DENIES** TriMet's Motion.


<u>BACKGROUND</u>

    The following facts are taken from Plaintiff's Complaint
(#1) and documents referenced therein and are assumed to be true
for purposes of this Motion only:

    Plaintiff describes herself as a "camera of accountability"
who has reported on the internet about various topics ranging

2 - OPINION AND ORDER

from a bicycle accident to an incident in which a Portland high-school student was pepper-sprayed to the Occupy Portland protests.

**I.   February 12, 2013, Incident**

While riding on a bus in downtown Portland on February 12, 2013, Plaintiff observed police arresting an individual "rather roughly" on a sidewalk.  Plaintiff left the bus and began broadcasting the arrest live over the internet using her smartphone and Ustream, an online, real-time, video-streaming application.

When Plaintiff began to broadcast video of the arrest, there were police officers on scene and the suspect was already in custody.  One of the officers, Defendant Officer Taylor Letsis, is an employee of the Gresham Police Department who was working that day as a member of TriMet's Transit Police.

Throughout the time that Plaintiff broadcasted the arrest, Plaintiff did not interfere with any police activities or cross any police line.  Officer Letsis approached Plaintiff after she had been broadcasting for nearly four minutes.  He asked to see the video that she had been broadcasting to determine whether it recorded any evidence of a crime.  After Plaintiff initially declined to show the video to Officer Letsis and explained she only began broadcasting after the suspect was in custody, Officer Letsis informed her that permitting him to watch the video was

3 - OPINION AND ORDER

"not a choice" and that Plaintiff could either show the video to him or he would seize her smartphone.  After Plaintiff insisted she would not show the video to Officer Letsis without a subpoena, Officer Letsis grabbed the smartphone from Plaintiff's hands, which resulted in termination of the live video broadcast.

After seizing the smartphone, Officer Letsis grabbed Plaintiff's wrist and jacket cuff, twisted Plaintiff's arm, and instructed Plaintiff to "stop resisting."  Another officer (Defendant Unknown Officer No. 1) approached Plaintiff and Officer Letsis.  Officer Letsis continued to grip Plaintiff's arm for approximately 20 seconds before he released her.

Because the broadcast had been terminated, the Ustream application prompted the smartphone user to determine whether to "archive" the video.  Officer Letsis appeared poised to press the "No" button (which would have resulted in the broadcast being deleted), but Plaintiff protested.  Officer Letsis then archived the video and followed Plaintiff's instructions to have it posted on Facebook, Twitter, and YouTube websites.

After the video had been archived on Ustream, Office Letsis handed the smartphone to Plaintiff and ordered her to show him the video.  Plaintiff located the video on Ustream's public website and pressed "play."  Officer Letsis then grabbed the smartphone again from Plaintiff's hands.

After Officer Letsis viewed the video for approximately ten seconds, Plaintiff asked if she was free to leave.  Officer Letsis responded she was not.  While still holding Plaintiff's smartphone, Officer Letsis told Plaintiff that he could take her smartphone at any time and warned Plaintiff that her phone could be seized if she did not comply with future demands by police to view video.

Officer Letsis then returned the smartphone to Plaintiff and informed her that she was free to go.  Plaintiff recorded a follow-up segment that spanned approximately four minutes and 48 seconds.

Approximately three days later on February 15, 2013, a local television station published a report on the incident in which Gresham police spokesman Claudio Grandjean stated:  "[Officer Letsis] wasn't doing something illegal.  Now, was he inappropriate, or   . . . a little rough, or officious or whatever?  We can look at that, but that's not nearly as important as was he doing something illegal."

On March 5, 2013, Gresham Police Chief Craig Junginger issued a memorandum to all Gresham police officers at least in part in response to the February 12, 2013, incident.  In the memorandum he stated he "support[s] the reasonable actions of officers to seize cell phones when there is probable cause to believe the recording contains evidence of a crime and there are

5 - OPINION AND ORDER

exigent circumstances to seize the cell phone to prevent the destruction or loss of the evidence," but he advised he "highly discourage[d] the seizing of property, or the arresting of persons, for simply recording your official actions without your knowledge."

## II. Organization of the Transit Police

TriMet is a municipal corporation of the State of Oregon that provides public-transit services in Multnomah, Washington, and Clackamas Counties.  The Transit Police Division is a service that TriMet provides pursuant to intergovernmental agreements (IGAs) among TriMet, and the Cities of Portland and Gresham, and other municipalities.

Pursuant to such IGAs, Transit Police patrols are administered, coordinated, and directed by the Portland Police Bureau and staffed by officers from the Portland Police Bureau, Gresham Police Department, and the other jurisdictions, but the Transit Police Division Commander is selected jointly by the Portland Police Bureau and TriMet.  Selection and assignment of officers to the Transit Police is determined jointly by the participating jurisdictions, TriMet, and the Transit Police command personnel.

Officers assigned to the Transit Police are subject to both the Transit Division's Standard Operating Procedures and the General Orders of each officer's respective jurisdiction.  To the

extent that a conflict exists between an officer's General Orders and the Transit Division Standard Operating Procedures, the General Orders control.

When TriMet enters into an IGA with a jurisdiction, that jurisdiction is said to be "an independent contractor for all purposes under this Agreement," the officers are said to remain employees of their respective jurisdictions and are not to be considered employees or agents of TriMet, and the various jurisdictions are to be responsible for paying the salaries and benefits of their officers who are assigned to the Transit Division.  In addition, the officers assigned to the Transit Division remain subject to the collective-bargaining agreements of their respective jurisdictions, and the various jurisdictions remain responsible for disciplining or discharging their officers.

## **<u>STANDARDS</u>**

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  "The plausibility standard

7 – OPINION AND ORDER

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).


## <u>DISCUSSION</u>

In her Complaint Plaintiff brings six claims, three of which name TriMet as a Defendant:  Claims Four, Five, and Six.

Plaintiff brings Claim Four under 42 U.S.C. § 1983 alleging Gresham, Portland, and TriMet maintained official policies allowing Transit Police officers to seize recording devices unconstitutionally, failed to train Transit Police officers regarding the rights guaranteed to the public and media under the First and Fourth Amendments to the United States Constitution, and failed to supervise and to discipline Transit Police officers for unlawfully interfering with the First Amendment rights of the public and media, all of which Plaintiff alleges were the "moving forces" behind Officer Letsis's alleged violation of Plaintiff's constitutional rights during the February 12, 2013, incident.

Plaintiff alleges in Claim Five that Portland, Gresham, and TriMet are liable under the Privacy Protection Act (PPA), 42 U.S.C. §§ 2000aa(b) and 2000aa-6(a)(1) because Officer Letsis, an employee of Gresham, Portland, and TriMet within the meaning of the PPA, unlawfully seized and searched materials possessed by a person for the purpose of dissemination to the public.

In Claim Six Plaintiff brought three counts in which Plaintiff sought declarations that the actions of Officer Letsis: (1) violated Article I, Section 9, of the Oregon Constitution; (2) violated Article I, Section 8, of the Oregon Constitution; and (3) constituted a common-law false arrest.  Although TriMet initially moved to dismiss Plaintiff's Claim Six, counsel for TriMet withdrew that challenge to Claim Six at oral argument after Plaintiff's counsel agreed to dismiss Claim Six, Count Three (false arrest), and clarified that Counts One and Two of Claim Six are brought only with respect to the specific conduct of Officer Letsis and not as a broader challenge to TriMet policies.  Accordingly, on this record the Court denies as moot Trimet's Motion as to Plaintiff's Claim Six and **directs Plaintiff to file an amended complaint no later than August 7, 2015,** that clarifies Counts One and Two consistent with Plaintiff's representation at oral argument and that omits her common-law false-arrest claim.

Accordingly, the Court limits its consideration of TriMet's

10- OPINION AND ORDER

Motion to Dismiss for failure to state a claim to Claims Four and Five.

As to Claim Four, TriMet contends Plaintiff has failed to show that TriMet was sufficiently involved in Officer Letsis's allegedly unlawful actions to give rise to § 1983 liability under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

As to Claim Five, TriMet contends Plaintiff has not sufficiently shown that Officer Letsis was an "employee" of TriMet within the meaning of the PPA.

**I.    Claim Four**

As noted, in Claim Four Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that Gresham, Portland, and TriMet are liable for Officer Letsis's allegedly unconstitutional conduct under a *Monell* theory.

**A.    Standard**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, *e.g.*, '*solely* because

11- OPINION AND ORDER

it employs a tortfeasor.' But the municipality may be held liable 'when execution of a government's *policy* or *custom* . . . inflicts the injury.'" *Los Angeles Cnty., California v. Humphries*, 562 U.S. 29, 36 (2010)(quoting *Monell*, 436 U.S. at 691, 694)(emphasis and omissions in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). When a plaintiff alleges a municipality's policy or custom provides the basis for § 1983 liability, the municipality will only be liable when "its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)(quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). *See also Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S.Ct. at 1359. For a failure-to-train claim to be actionable against a municipality under § 1983, however, the municipality's failure to train its employees must constitute "'deliberate indifference to the rights of persons with whom the [untrained employees] come

12- OPINION AND ORDER

into contact.'"  *Id.* (quoting *Harris*, 489 U.S. at 389).
Deliberate indifference is a "'stringent standard of fault,'"
which, in the context of *Monell* liability, requires the plaintiff
to demonstrate "city policymakers are on actual or constructive
notice that a particular omission in their training program
causes city employees to violate citizens' constitutional
rights."  *Id.* at 1360 (quoting *Bd. of Cnty. Comm'rs of Bryan
Cnty., Oklahoma v. Brown*, 520 U.S. 397, 410 (1997)).  "A pattern
of similar constitutional violations by untrained employees is
'ordinarily necessary' to demonstrate deliberate indifference for
purposes of failure to train."  *Id.* (quoting *Bryan Cnty.*, 520
U.S. at 409).  In the absence of "a pattern of similar
constitutional violations," a municipality is not liable under
*Monell* for a failure to train unless "the unconstitutional
consequences of failing to train" the employee are "patently
obvious."  *Id.* at 1361.

**B.   Analysis**

In Claim Four Plaintiff alleges TriMet's policies and
customs and its failure to train Officer Letsis led to the
alleged constitutional violations.

TriMet, in turn, contends Plaintiff's allegations are
insufficient at this early stage of the proceedings to establish
that TriMet's policies or customs were the moving force behind
Officer Letsis's allegedly unconstitutional conduct or that

13- OPINION AND ORDER

TriMet was the organization responsible for training Officer Letsis with respect to the conduct that involves the constitutional rights of Plaintiff that were allegedly violated. TriMet specifically contends the IGAs on which Plaintiff relied in her Complaint demonstrate the officers' jurisdictions retained control over the training and discipline of their officers who were assigned to the Transit Division; those officers remained subject to their respective jurisdictions' General Orders; and, therefore, the policies of TriMet could not be the "moving force" behind Officer Letsis's allegedly unconstitutional conduct.

Although TriMet is correct that portions of the IGAs suggest the various jurisdictions are responsible for the training and discipline of officers assigned to the Transit Division with respect to the kind of conduct that allegedly violated the constitutional rights of Plaintiff, Plaintiff alleges and the IGAs make clear that Transit Division officers are also subject to the Transit Division Standard Operating Procedures.  Thus, for purposes of assessing the sufficiency of Plaintiff's Complaint under Rule 12, the Court concludes it is plausible that TriMet policies and training could have been the moving force behind Officer Letsis's alleged constitutional violations.  Although Plaintiff's ultimate burden to prove a *Monell* claim is rigorous, the Court must accept Plaintiff's allegations in her Complaint as true, and, therefore, concludes Plaintiff has sufficiently pled

her Claim Four against TriMet under § 1983.

Accordingly, on this record the Court denies TriMet's Motion to Dismiss Claim Four.

**II.  Claim Five**

As noted, Plaintiff brings Claim Five against TriMet, Portland, and Gresham under the PPA contending those entities are liable for Officer Letsis's alleged violations of the PPA because Officer Letsis is an "employee" of TriMet, Portland, and Gresham.

**A.    Standard**

Subject to certain exceptions not relevant here, the PPA provides:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce.

42 U.S.C. § 2000aa(a).  The PPA provides a civil cause of action for damages may be brought

> against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment.

42 U.S.C. § 2000aa-6(a)(1).  If a state has not waived its sovereign immunity, the PPA provides a cause of action may be

15- OPINION AND ORDER

brought "against an officer or employee of a State who has
violated this chapter while acting within the scope under color
of his office or employment."  42 U.S.C. § 2000aa-6(a)(2).

The PPA does not define who qualifies as an "employee" under
the Act.  When "a statute does not otherwise define the term
'employee,' 'the term 'employee' should be understood in light of
the general common law of agency.'"  *In re Crystal Cathedral
Ministries*, 584 F. App'x 307, 308 (9th Cir. 2014)(quoting *Cmty.
for Creative Non-Violence v. Reid*, 490 U.S. 730, 741 (1989)).
The Supreme Court has instructed:

> In determining whether a hired party is an employee
> under the general common law of agency, we consider the
> hiring party's right to control the manner and means by
> which the product is accomplished.  Among the other
> factors relevant to this inquiry are the skill
> required; the source of the instrumentalities and
> tools; the location of the work; the duration of the
> relationship between the parties; whether the hiring
> party has the right to assign additional projects to
> the hired party; the extent of the hired party's
> discretion over when and how long to work; the method
> of payment; the hired party's role in hiring and paying
> assistants; whether the work is part of the regular
> business of the hiring party; whether the hiring party
> is in business; the provision of employee benefits; and
> the tax treatment of the hired party.  No one of these
> factors is determinative.

*Reid*, 490 U.S. at 751-52 (citations omitted).  *See also JustMed,
Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010).  "Because 'the
common-law test contains no shorthand formula or magic phrase
that can be applied to find the answer, all of the incidents of
the relationship must be assessed and weighed with no one factor

being decisive.'"  *JustMed*, 600 F.3d at 1125-26 (quoting

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)).

**B.  Analysis**

TriMet contends Plaintiff's Claim Five should be dismissed

because Plaintiff cannot show Officer Letsis was an "employee" of

TriMet within the meaning of the PPA.  In support of its

contention TriMet points to several provisions of the IGAs,

including those that state the officer-supplying jurisdictions

are to be treated as "independent contractor[s]," the

jurisdictions remain responsible for payment of wages and

benefits to officers assigned to the Transit Division, the

jurisdictions remain responsible for the discipline of officers

assigned to the Transit Division, and officers assigned to the

Transit Division "remain employees of the City of Gresham and

will not be considered employees or agents of TriMet."  In

addition, TriMet contends the fact that the General Orders of the

officers' respective jurisdictions prevail over the Transit

Division Standard Operating Procedures establishes that the

various jurisdictions retain the right to control the manner and

means by which the officers conduct their policing duties.  *Reid*,

490 U.S. at 751.

Although TriMet identifies relevant evidence that may

satisfy the *Reid* test and ultimately lead to a finding that

Officer Letsis was, within the meaning of the PPA, an "employee"

of the City of Gresham and not TriMet while he was assigned to
the Transit Division, the Court cannot conclusively make that
finding at this early stage of the proceedings.  Although TriMet
also correctly points out that the jurisdictions' General Orders
prevail over the Transit Division Standard Operating Procedures
in the event of a conflict, there is not any evidence in this
record that shows the degree to which the Transit Division
Standard Operating Procedures govern the means and manner by
which the officers assigned to the Transit Division are to
perform their work, including the policies and practices under
which Officer Letsis was acting at the time he seized Plaintiff's
smartphone.  Thus, Plaintiff's allegation that Officer Letsis was
an "employee" of TriMet within the meaning of the PPA is
sufficiently plausible to entitle Plaintiff to proceed against
TriMet on Claim Five.

Accordingly, on this record the Court concludes Plaintiff
has adequately pled a claim against TriMet under the PPA.  The
Court, therefore, denies TriMet's Motion to Dismiss Plaintiff's
Claim Five.


**<u>CONCLUSION</u>**

For these reasons, the Court **DENIES** TriMet's Motion (#23) to
Dismiss.  The Court directs Plaintiff to file an amended
complaint that omits the false-arrest count in Claim Six and

18- OPINION AND ORDER

further sets out Counts One and Two in a manner that is

consistent with Plaintiff's representations at oral argument no

later than **August 7, 2015**.

      IT IS SO ORDERED.

      DATED this 17th day of July, 2015.


                              /s/ Anna J. Brown


                        _____
                        ANNA J. BROWN
                        United States District Judge